850 A.2d 1157

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Ellis Howard GOODMAN.**

**Misc. AG No. 15, Sept. Term, 2003.**

Court of Appeals of Maryland.

June 7, 2004.

Melvin Hirshman, Bar Counsel, Glenn M. Grossman, Deputy Bar Counsel for Atty. Grievance Com'n, for petitioner.

Aron U. Raskas, Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

GREENE, J.

On June 26, 2003, the Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary or remedial action against Respondent, Ellis H. Goodman. Bar Counsel charged Respondent with violating several Maryland Rules of Professional Conduct (MRPC), alleging that he filed a complaint in the District Court of Maryland and signed the name of a different attorney (David Herman) to the complaint, without that attorney's knowledge or permission. The Commission also alleges that Respondent attempted to negotiate a settlement with opposing counsel while pretending to be David Herman and that Respondent intentionally misled the trial judge to make him think that David Herman was the attorney who had filed the action and that Respondent was merely standing in for Mr. Herman. In particular, the petition alleged that Respondent violated MRPC 3.3(a)(1) (Candor Toward Tribunal),[1] MRPC 3.4(c) (Fairness to Opposing Party and Counsel),[2] MRPC 8.1(a) (Bar Admission and Disciplinary Matters),[3] 8.4(b),(c), and (d) (Misconduct),[4] and Md.Code Ann., Crim. Law Art. Section 8–606.[5]

---

1. Rule 3.3(a)(1) provides as follows:

    A lawyer shall not knowingly:
    (1) make a false statement of material fact or law to a tribunal[.]

2. Rule 3.4(c) provides as follows:

    A lawyer shall not:
    (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]

3. Rule 8.1(a) provides as follows:

    An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
    (a) knowingly make a false statement of material fact[.]

4. Rule 8.4 provides, in pertinent part, as follows:

    It is professional misconduct for a lawyer to:

    *    *    *    *    *    *

    (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

Pursuant to Maryland Rule 16–752(a) [6], we referred the matter to Judge Shirley Watts, of the Circuit Court for Baltimore City, to make findings of fact and proposed conclusions of law. Judge Watts held an evidentiary hearing on October 29, 31, and November 19, 2003, and concluded that Respondent violated the following Rules of Professional Conduct: 3.1(a)(1), 3.3(c),[7] and 8.4(c), as well as Md.Code Ann., Crim. Law Art., Sec. 8–606. In addition, Judge Watts found one mitigating factor present in this case.

Respondent filed exceptions to the factual findings and conclusions of law and recommended that the appropriate sanction for his conduct should be a stern reprimand. The Attorney Grievance Commission excepted to the failure of Judge Watts to find specifically that Respondent violated Rule 8.4(b), and has recommended that Respondent be disbarred. We overrule all of Respondent's exceptions and sustain the exception of the Commission. Moreover, we conclude that the appropriate sanction in this case is disbarment.

---

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

\*     \*     \*     \*     \*     \*

5. Md.Code Ann., Crim. Law Art. section 8–606 provides in pertinent part:
   (b) Prohibited.—A person may not or may not attempt to:
   (1) willfully make a false entry in a public record.

6. Md. Rule 16–752(a) states:
   (a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

7. It is clear that the hearing judge made a clerical error and meant to write "3.3(a)(1) and 3.4(c). There is no 3.1(a)(1). Also, 3.3(c)—" a lawyer may refuse to offer evidence that the lawyer reasonably believes is false—has nothing to do with the case at bar. Furthermore, later in her Findings of Fact and Conclusions of Law, Judge Watts cited the correct rules.

## I. The Hearing Judge's Opinion

### FINDINGS OF FACT

The findings of fact made by Judge Watts can be summarized as follows. Respondent has been a member of the Maryland Bar since June 23, 1966, and has been employed as an Assistant Public Defender (APD) in Baltimore City. Respondent has not been the subject of prior disciplinary proceedings. In 1991, Respondent founded a charity called "Heroes of Hope," an organization that helps children and families living through a life threatening illness. He founded the charity because of his experience with the life threatening illness of his surrogate son, Bobby Herman.[8] Bobby is the biological child of David Herman, the Maryland attorney whose name Respondent used to file the case that became the subject of these disciplinary proceedings. Mr. Herman and Respondent had been friends and law partners for many years and when Mr. Herman divorced and moved away from Maryland, his son Bobby remained in Maryland with Respondent and his wife.

Respondent created the InterMall project, consisting of advertising kiosks in shopping malls, in order to raise funds for Heroes of Hope. Fairfield Communities, Inc. (Fairfield) purchased advertising space from InterMall. According to Respondent, Fairfield failed to pay the amount billed for the space provided. Thereafter, Respondent filed an action in the District Court of Maryland on behalf of InterMall, seeking to recover $1,491.00 from Fairfield. He later amended the complaint to increase the damages amount to $2,176.80. On both complaints, Respondent listed the name of D. David Herman as the attorney for the plaintiff. Respondent did not state his own name on either of the complaints. Respondent also sent

---

8. In 1990, Bobby was diagnosed with a plastic anemia. During the illness, Respondent's daughter began throwing a penny into a wishing well for Bobby to recover. His condition improved unexpectedly. Thereafter, Respondent started a charity to place wishing wells in hospitals and later established the Heroes of Hope, an organization that awards medals to young people with life threatening illnesses.

a letter and four subpoenas to the District Court of Maryland, identifying David Herman as the attorney for the plaintiff. The letter was printed on letterhead stating "Law Offices of D. David Herman." Respondent testified that he created the letterhead for use in the InterMall suit.

Mr. Herman did not know of the InterMall suit and did not give Respondent permission to use his name on the pleadings. Thomas W. Jones, Esq., was the attorney for Fairfield and the complainant in the case at bar. During telephone negotiations with Mr. Jones, Respondent represented himself as David Herman. On October 17, 2002, the day the case was scheduled to go to trial, Respondent, pretending to be Mr. Herman, negotiated a settlement over the phone with Mr. Jones. Later that day, Mr. Herman left a message for Mr. Jones stating that Mr. Herman would be unable to attend the trial and that Ellis Howard Goodman would be there instead, representing InterMall. When Mr. Jones met Respondent, he became suspicious because he recognized Respondent's voice as the voice known to him as Mr. Herman. Mr. Jones called Mr. Herman in Hawaii and discovered that Mr. Herman was unaware of this case, was not the attorney for the plaintiff, and had not given Respondent permission to use his name.

When the case was called, Respondent informed the judge that he was handling the case and then attempted to place the settlement on the record. Respondent implied that Mr. Herman was the attorney in the case but would not be present for trial. Mr. Jones then asked to speak with the judge in chambers. Mr. Jones told the judge that Respondent had been posing as Mr. Herman and that he would not go forward with the settlement in light of the misrepresentations. Respondent denied the accusations, by either shaking his head or saying, "no, that's not true." When Respondent testified at the disciplinary hearing, he admitted that he was not candid with the judge about filing the case under Mr. Herman's name. Specifically, Judge Watts found that "Respondent did not acknowledge to Judge Chiapparelli that he had been impersonating Mr. Herman (and that Mr. Herman was not, in fact, the attorney of record in the case) and Respondent

specifically denied the Complainant's accusations on this point." Judge Chiapparelli decided to place the trial at the end of his docket. When the case was called, Respondent did not appear and Judge Chiapparelli dismissed the case. The case has not been refiled. Mr. Jones filed a Complaint with Bar Counsel. Respondent then called Mr. Jones to apologize for his conduct.

Judge Watts specifically found that,

Respondent engaged in intentional dishonesty and deceit when he filed the pleadings and requested subpoenas in this case and repeatedly misrepresented the identity of counsel of record in this case to Mr. Jones. The Court also finds that the Respondent engaged in intentional dishonesty and deceit before Judge Chiapparelli when he denied having been posing as Mr. Herman and failed to advise the Court that Mr. Herman was not in fact the attorney of record in the InterMall case. The Court finds that the Respondent misrepresented the identity of counsel of record, at least in part, because as an APD, he was generally prohibited from engaging in the private practice of law, and in part, because he thought his actual appearance in court would not be necessary. The Respondent, a recently appointed APD, did not want to have his appearance recorded in a civil case because he believed that such action was against the policy of the Public Defender's office. The Respondent did not seek the permission of any supervisor in the Office of the Public Defender to participate in the case. The Respondent testified that he believed that the case would be settled and that it would not actually be necessary for him to appear in court. Additionally, the Respondent did not want to appear as both a witness and counsel in the case; and this thought affected his decision to use Mr. Herman's name. The record establishes that the Respondent had logical reasons that motivated his dishonest and deceitful behavior.

## MITIGATION

Respondent argued that his misconduct was caused by health problems. In particular, he argued that he had an

inability to think clearly, which was caused by low blood sugar and a bad reaction to some medication he was taking. Dr. Kroopnick, Respondent's internist, testified about these matters. Judge Watts decided that there was,

> no medical evidence that the Respondent had low blood sugar during the relevant period of time. Further, there is no evidence that the Respondent was unable to think clearly during the time period in question. The Respondent filed the lawsuit on April 17, 2002, and misrepresented his identity to Mr. Jones up until the day of trial on October 17, 2002. The evidence establishes that during this time he functioned as a competent APD and showed no evidence of confusion or disorientation in any other aspect of his life.

Judge Watts noted that Dr. Kroopnick was not able to produce a single test that verified that Respondent had low blood sugar during the relevant time period. She concluded that Dr. Kroopnick's testimony (that Respondent's behavior in this case was caused by low blood sugar and a bad reaction to medication) was "without merit."

Respondent also presented the testimony of Dr. Adler, a psychologist who performed a psychological evaluation of Respondent, at the request of Dr. Glass, a psychiatrist to whom Respondent had been referred after notifying Dr. Kroopnick of the instant case. Dr. Adler testified that diabetes, history of chronic pain, financial stress, and depression and anxiety contributed to Respondent's behavior in this case. He admitted on cross-examination, however, that he did not know how long Respondent had suffered from "depressive thinking," and that he could not confirm that Respondent had depression or anxiety during the relevant time period. Dr. Adler also testified that Respondent had a "somewhat bizarre over-attachment" to his charity, but did not say that the attachment caused Respondent's behavior in the instant case.

Judge Watts noted that the testimony of Dr. Tellefsen, Bar Counsel's rebuttal witness, confirmed that Respondent had an obsessive attachment to his charity and dysthymic disorder, or chronic depressed mood. Although Dr. Tellefsen testified on

cross-examination that it was "probably unlikely" that Respondent would have engaged in the deceit if the matter had concerned any entity other than his charity, she did not conclude that any mental condition or disorder caused Respondent's behavior. In fact, as noted by Judge Watts, Dr. Tellefsen testified that she was "unable to find any mental condition that was impairing Respondent's ability to function at the time."

Judge Watts concluded that the record did not establish that any mental health disorder caused Respondent's behavior. She also concluded that none of the other problems experienced by Respondent (car accidents, bankruptcy, financial stressors, pain and sleep medication, diabetes, depression) caused his behavior in this case. The judge noted that the record "establishes Respondent's behavior was motivated by his desire not to interfere with his job as an APD, his belief that the case would be settled, and his desire not to appear as both a witness and the attorney of record."

Respondent urged the court to find that his misrepresentations were not for personal gain, but for the benefit of his charity. Judge Watts declined to make such a finding, noting that InterMall had been funded "almost entirely" by Respondent and that the project did not generate a profit and was not generating enough sales to have been financially viable at the time of the lawsuit. Judge Watts also noted that the record reflected Respondent's recent history of personal financial difficulty.

For mitigation purposes, Respondent also presented the testimony of his employer, Stephen Harris, Public Defender for the State of Maryland. Judge Watts found that Respondent had established that "he performed his job as an APD in a conscientious and diligent manner and Mr. Harris is willing to have him continue in the position."

Finally, Respondent presented evidence that Mr. Herman would have represented InterMall pro bono if Respondent had asked him. Judge Watts found that Mr. Herman's willingness to have taken the case did not mitigate Respondent's conduct.

## CONCLUSIONS OF LAW

Judge Watts concluded that Respondent violated MRPC 3.3(a)(1), 3.4(c), and 8.4(c) and Section 8–606 of the Criminal Law Article of the Annotated Code of Maryland. Specifically, Judge Watts wrote:

The Respondent made a false statement to the Court when he filed the Complaint, Amended Complaint and subpoena requests in the name of another attorney in disregard for his obligation to be truthful to the Court and thereafter in Court misled the tribunal to believe that he had not been impersonating the other attorney. The Respondent engaged in deceitful and dishonest conduct when he misrepresented his identity to opposing counsel. In filing the lawsuit and in his representations and omissions to Judge Chiapparelli, the Respondent made false statements of material fact in violation of Rule 3.3(a)(1), disregarded obligations to be truthful in violation of Rule 3.4(c), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c). In misrepresenting his identity to opposing counsel, the Respondent engaged in dishonest and deceitful behavior in violation of rule 8.4(c). In addition, the Court finds that the Respondent willfully made a false entry in a public record in violation of section 8–606 of the Criminal Law Article of the Annotated Code of Maryland.

## II. Standard of Review

■■■■ This Court has original jurisdiction over attorney disciplinary matters. *Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 539, 810 A.2d 457, 474–475 (2002). The hearing judge's findings must be supported by clear and convincing evidence. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). Although we conduct an independent review of the record, we accept the hearing judge's findings of fact unless they are clearly erroneous. *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763–64 (2002). We review the hearing judge's proposed conclusions of law *de novo. Attorney Grievance*

*Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

## III. Discussion

Bar Counsel filed exceptions [9] challenging Judge Watts's failure to find specifically that Respondent violated MRPC 8.4(b). MRPC 8.4(b) provides that it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." In view of the fact that Judge Watts found that Respondent willfully made a false entry in a public record, in violation of section 8–606(b)(1) of the Criminal Law Article, we agree with Bar Counsel on this matter. The hearing judge, also, should have concluded that Respondent violated MRPC 8.4(b).

Respondent filed a number of exceptions, which we will summarize and address. Respondent first lists a number of factual findings that he believes Judge Watts failed to make.[10] They consist of Respondent's long history as an attorney and a discussion of his past contributions to the profession and to charity. They also include a discussion of Respondent's recent financial troubles and a statement that the Public Defender's office is willing to continue to employ him. Respondent also claims that Judge Watts failed to make a finding that he had a

9. Bar Counsel's other exceptions refer to clerical errors in Judge Watts's Findings of Fact and Conclusions of Law. These include the judge's reference to MRPC 3.1(a)(1) and 3.3(c). We have noted that the rules intended were 3.3(a)(1) and 3.4. In addition, on page 14 of the Findings, Dr. Tellefsen's first name is spelled "Christine" instead of "Christiane." Bar Counsel requests that the record be corrected to show the name as "Christiane."

10. We have said in the past that, "[o]ur hearing courts' duties are to consider all evidence properly submitted in the discipline process. Absent indications that such evidence is not considered, we presume it was considered along with all the other evidence." *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 385, 773 A.2d 463, 468 (2001). "The mere failure to mention a particular fact in its findings, normally is not the equivalent of failing to consider it." *Id.* We keep that standard in mind while addressing Respondent's long list of findings he thinks should have been made.

"bizarre over-attachment" to his charity and that he has acknowledged that it was wrong for him to represent himself as Mr. Herman.

Judge Watts found that Respondent had been an attorney since 1966 and that he had never been the subject of a disciplinary proceeding. She also discussed his charity work, his financial difficulties, his employer's willingness to retain him, his over-attachment to his charity, and the fact that he called opposing counsel to apologize for pretending to be Mr. Herman.

Respondent also argues that Judge Watts should have found that his actions "were not motivated by financial gain or undertaken for a selfish motive," and that no individual or entity lost money as a result of Mr. Goodman's actions, other than that InterMall was denied the recovery that it claimed. We see no reason why the record in this case *requires* Judge Watts to have made those findings. It is clear that the judge was aware of the relevant facts. Furthermore, there is no reason the judge should be forced to believe any testimony that Respondent acted completely unselfishly. Judge Watts specifically noted that InterMall had been funded "almost entirely" by Respondent and that it was not generating enough sales to have been financially viable at the time of the lawsuit. Judge Watts also noted that the record reflected Respondent's recent history of personal financial difficulty. She did not, however, find that Respondent's behavior was motivated by a desire for personal gain. Rather, she discussed the fact that as an APD, Respondent would not have been permitted to represent InterMall without permission, the belief that he could get away with the deception because he thought he would not have to appear in court, and the desire to avoid being both a witness and an attorney in the case. Judge Watts then concluded that "Respondent had logical reasons that motivated his dishonest and deceitful behavior." We cannot say that a refusal to find that Respondent's behavior was not motivated by a desire for personal gain was clearly

erroneous. *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763–64 (2002).

■ Respondent also urges us to conclude that Judge Watts erred by failing to find that he "did not act with intentional dishonesty when he took the actions that are the subject of this matter," and that he "would not have taken the actions that are the subject of this matter but for the mental and physical conditions from which he suffered at the time he acted in this fashion." There was sufficient evidence in the record to support a finding that Respondent persistently pretended to be someone he was not and that he did so intentionally. In fact, on this record, there is no other way to see the actions of Respondent. He pretended to be a different attorney because he believed he was not in a position to represent InterMall himself. The record in this case does not require Judge Watts to have been persuaded that medical problems, emotional problems, car accidents, medication, financial difficulties, or "bizarre over-attachments" to his charity caused or mitigated Respondent's actions. The hearing judge is free to disregard evidence if it is not credible. *Attorney Grievance Comm'n v. Miller,* 301 Md. 592, 607, 483 A.2d 1281, 1289 (1984). It was not clearly erroneous for Judge Watts to decide that Respondent acted with intentional dishonesty. In fact, as previously mentioned, Judge Watts noted that "the evidence establishes that during this time he functioned as a competent APD and showed no evidence of confusion or disorientation in any other aspect of his life."

■ Respondent asserts that Judge Watts should have found that Mr. Herman would have handled the case had he been asked to do so. Judge Watts noted that fact but concluded that it did not mitigate Respondent's actions. We agree with the hearing court. The fact is that Respondent did not ask Mr. Herman to represent InterMall. Instead, Respondent pretended to be Mr. Herman, an act of intentional dishonesty that is a violation of the Rules of Professional Conduct.

Finally, Respondent contends that Judge Watts should have found that Respondent has been cooperative and forthcoming throughout the grievance process; that he has a "reputation for honesty, integrity, good character, and commitment to charitable causes;" that the acts in this case were an aberration; that he is fit to continue practicing law; and that the public would not be threatened by his continued practice of law. We do not think Judge Watts erred by refusing to make those findings. We have said, that "intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character." *Attorney Grievance v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488. While we recognize Respondent's long history of service in the legal profession, the actions that resulted in this disciplinary matter were intentionally dishonest and cannot be ignored.

In addition to his complaints that the hearing judge failed to make certain findings, Respondent also asserts that some of the findings the judge made are not supported by the record. The list of allegedly unsupported findings is 14 pages long. We find these exceptions to be without merit. Rather than repeating every one of the complaints in detail, (some of which do not matter to the outcome of this case),[11] we will summarize them below.

█ Respondent contends that the judge incorrectly found that Respondent "engaged in intentional dishonesty and deceit before Judge Chiapparelli when he denied having been posing as Mr. Herman and failed to advise the Court that Mr.

---

11. For example, Respondent's first argument is that the court erred by finding that he gave a "false answer" to an interrogatory relating to David Herman's letterhead. Whether he gave a false answer about the letterhead does not affect the outcome of this case. Judge Watts's finding that he provided a false answer to an interrogatory did not form the basis of her conclusion that he violated various rules of professional conduct when he intentionally misrepresented his identity to opposing counsel and then misled the judge about it.

Herman was not in fact the attorney of record in the Inter-Mall case ... [, and] knowingly made a false statement to Judge Chiapparelli in Chambers when he denied the accusation that he had been impersonating the other attorney." Respondent admitted that he was not "candid" with the judge about "what had taken place and my filing the case in the name of David Herman." In the face of such an admission, we fail to see how it is clearly erroneous to determine that he knowingly made a false statement to the judge. In order to have made such a "statement" it was not necessary for Respondent to have stated exactly, "for the last two months and until I arrived in court here today, I was pretending to be David Herman and David Herman has no knowledge of this lawsuit." It is enough that Respondent misled the judge into thinking that he was just standing in for Mr. Herman, implying that Mr. Herman was really the attorney who had filed the case. In doing so, Respondent violated MRPC 3.3(a)(1) which prohibits attorneys from knowingly making a false statement of material fact or law to a tribunal. He also violated MRPC 3.4(c) which prohibits attorneys from knowingly disobeying an obligation under the rules of a tribunal. Respondent had an obligation to be truthful with opposing counsel and with the judge and he knowingly disobeyed that obligation. He also violated MRPC 8.4(c), which prohibits attorneys from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

■ Respondent also argues that the hearing judge incorrectly found that Respondent "must prove a mental disorder." Judge Watts did not make such a finding. Rather, she noted that she did not find any evidence in the record to support Respondent's claims that physical problems, emotional problems, or any other host of problems he noted, caused or mitigated his behavior in this case. She also found that the evidence did not support a finding that any mental health disorder caused or mitigated Respondent's behavior. We agree with her findings on those questions. As we have said:

> [I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will

not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. *Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485. In *Vanderlinde,* we refused to hold that the attorney's dysthymic disorder, or long lasting depression, was the cause of her dishonest behavior, or a reason for her to avoid disbarment. *Vanderlinde,* 364 Md. at 387, 414, 773 A.2d at 469, 485. Likewise, the record in this case does not demand or even support a finding that "the most serious and utterly debilitating mental or physical health conditions" caused Respondent's inability to conform his conduct in accordance with the law and with the rules. As for Respondent's arguments that Dr. Adler testified that "as far as his intentionality is concerned, I don't think he at that time was demonstrating that he was intentionally trying to misrepresent himself ...," there is no requirement that the hearing judge has to accept that testimony as true or persuasive. *See Miller,* 301 Md. at 606–07, 483 A.2d at 1289 (noting that the hearing judge is free to disregard evidence that is not credible). In view of Judge Watts's findings that Respondent acted with intentional dishonesty and that he had logical reasons for engaging in the dishonest behavior, it is clear that she rejected Dr. Adler's opinion. It was not clearly erroneous for her to do so.[12]

## IV. Sanction

The appropriate sanction for a violation of the MRPC depends on the facts and circumstances of each case, including consideration of any mitigating factors. *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 526, 823 A.2d 651, 663 (2003); *Attorney Grievance Comm'n v. McClain,* 373 Md. 196, 211,

---

12. The same analysis can be applied to Respondent's argument that Dr. Tellefsen testified that Respondent's obsessive attachment to his charity "had an impact on how he conducts his activities," and compromised his ability to conform to the rules he knew he should follow.

817 A.2d 218, 227 (2003). Primarily, we seek "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal Profession." *Awuah*, 374 Md. at 526, 823 A.2d at 663 (quoting *Attorney Grievance Comm'n v. Blum*, 373 Md. 275, 303, 818 A.2d 219, 236 (2003)). To achieve the goal of protecting the public, we impose a sanction that is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.*

Here the evidence shows that Respondent intentionally and willfully pretended to be Mr. Herman for a period of two months, in order to represent InterMall, an entity existing for the purpose of raising money for Respondent's charity. He lied to opposing counsel and misrepresented the facts to the district court judge. The evidence was clear and convincing that Respondent intentionally committed these acts, and this conduct reflected on his honesty, trustworthiness, and fitness as a lawyer. Judge Watts found that,

> [i]n filing the lawsuit and in his representations and omissions to Judge Chiapparelli, the Respondent made false statements of material fact in violation of Rule 3.3(a)(1), disregarded obligations to be truthful in violation of Rule 3.4(c), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c). In addition, the Court finds that the Respondent willfully made a false entry in a public record in violation of Section 8–606 of the Criminal Law Article of the Annotated Code of Maryland.

In *Vanderlinde*, we held that disbarment was the appropriate sanction when an attorney, over a period of time, while working outside of the profession of law, misappropriated $3,880.67 from her employer for her own use. *Vanderlinde*, 364 Md. at 381, 419, 773 A.2d at 465, 488. In that case we emphasized that "disbarment ordinarily should be the sanction for intentional dishonest conduct." *Vanderlinde*, 364 Md. at 418, 773 A.2d at 488.

Similarly, in *Attorney Grievance Comm'n v. White*, 354 Md. 346, 731 A.2d 447 (1999), after a ban on private practice went into effect, we disbarred White, an assistant public defender, for lying under oath (in a deposition and in a trial) about the extent of her private practice. *White*, 354 Md. at 350, 355, 731 A.2d at 449, 452. As in the case at bar, White's actions violated MRPC 8.4(b), which provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." *White*, 354 Md. at 362, 731 A.2d at 456. Also similar to the case at bar, White's actions violated MRPC 8.4(c) (lawyers are prohibited from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and 3.3(a)(1) (lawyers are prohibited from making a false statement of material fact or law to a tribunal). *White*, 354 Md. at 363–64, 731 A.2d at 457.

We noted in *White* that "a lawyer's act of dishonesty, fraud, or deceit might cause the public to lose confidence in other lawyers and the judicial system as a whole." *White*, 354 Md. at 364, 731 A.2d at 457 (citing *Attorney Grievance Comm'n v. Richardson*, 350 Md. 354, 368, 712 A.2d 525, 532 (1998)). We also said that "candor by a lawyer, in any capacity, is one of the most important character traits of a member of the bar." *White*, 354 Md. at 364, 731 A.2d at 457. We disbarred White and concluded that "[t]he very integrity of the judicial system demands that the attorneys who practice in this State, who represent clients in the courts, and who interact in judicial matters with the courts do so with absolute honesty and personal integrity." *White*, 354 Md. at 367, 731 A.2d at 459.

Judge Watts found that Respondent engaged in intentional dishonest conduct. That finding is supported by the record in this case. Mr. Goodman presented no ethical or legal justification for his intentionally dishonest conduct. As previously stated, "intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or

are not, present in an attorney's character." *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488. Judge Watts also found one mitigating factor: namely, that Respondent performed his job as an assistant public defender in a "conscientious and diligent manner and Mr. Harris is willing to have him continue in the position." We do not believe that Mr. Harris's willingness to continue to employ Respondent is enough to permit Respondent to retain his license to practice law. Only in the case of compelling extenuating circumstances "will we even consider imposing less than the most severe sanction of disbarment" in cases involving dishonesty and fraudulent conduct. *Vanderlinde,* 364 Md. at 414, 773 A.2d at 485. We reject Respondent's arguments, overrule his exceptions, and find no compelling extenuating circumstances. The appropriate sanction is disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–515(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST ELLIS HOWARD GOODMAN.*