956 A.2d 135

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Charles E. McCLAIN, Sr.

Misc. Docket AG No. 23, Sept. Term, 2007.

Court of Appeals of Maryland.

Sept. 8, 2008.

2

Dolores O. Ridgell, Asst. Bar Counsel (Melvijn Hirshman, Bar Counsel, Atty. Grievance Com'n of Maryland), for petitioner.

Melvin G. Bergman, Greenbelt, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY and JOHN C. ELDRIDGE, (Retired, Specially Assigned), IRMA S. RAKER, (Retired, Specially Assigned), JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland, acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition For Disciplinary or Remedial Action against Respondent Charles E. McClain, Sr. on August 10,

---

1. Maryland Rule 16–751(a) provides in pertinent part:
   (a) Commencement of disciplinary or remedial action. (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2007. The Petition alleged that Respondent, who was admitted to the Bar of this Court on September 30, 1993, violated Maryland Rules of Professional Conduct ("MRPC") 1.1 (Competence),[2] 1.7(b) (Conflict of Interest),[3] 3.1 (Meritorious Claims and Contentions),[4] 3.2 (Expediting Litigation),[5] 3.3(a) (Candor Toward the Tribunal),[6] 4.4(a) (Respect for Rights of Third

---

**2.** MRPC 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**3.** MRPC 1.7(b) provides:

(b) Notwithstanding the existence of a conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

**4.** MRPC 3.1 provides:

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification or reversal of existing law. A lawyer may nevertheless so defend the proceeding as to require that every element of the moving party's case be established.

**5.** MRPC 3.2 provides:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

**6.** MRPC 3.3(a) provides:

(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

Persons),[7] 8.2(a) (Judicial and Legal Officials),[8] and 8.4(c) & (d) (Misconduct) [9] in his representation of Gustav Hamilton. Pursuant to Maryland Rules 16–752(a) [10] and 16–757(c),[11] we referred the matter to the Honorable Cathy H. Serrette of the Circuit Court for Prince George's County to conduct an evidentiary hearing and to submit to this Court proposed findings of fact and conclusions of law.

On March 10, 2008, Judge Serrette issued findings of fact and conclusions of law, in which she found that Respondent violated MRPC 1.1, 3.1, 3.2, 3.3(a), 4.4, 8.2(a) and 8.4(c) and (d), but not MRPC 1.7(b). Judge Serrette's findings of fact and conclusions of law read in pertinent part:

---

**7.** MRPC 4.4(a) provides:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that the lawyer knows violate the legal rights of such a person.

**8.** MRPC 8.2(a) provides:

A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

**9.** MRPC 8.4(c) & (d) provide:

It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

**10.** Maryland Rule 16–752(a) states:

(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**11.** Maryland Rule 16–757(c) states in pertinent part:

(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

### Background

On July 13, 2003, Barbara Johnson, through her attorney, Todd Kelting, Esquire, filed a partition action against Gustav Hamilton in the Circuit Court for Prince George's County seeking the sale of jointly owned real property. The court entered an Order of Default on November 18, 2003 and subsequently entered judgment against Mr. Hamilton. On May 21, 2004, the court ordered that the real property be sold, that the first $25,580.62 of proceeds be distributed to Ms. Johnson, and that any remaining proceeds be divided equally between the parties. In an Order dated June 7, 2004, the court appointed Ade Awojobi as Trustee to sell the property pursuant to Maryland Rule 14–303. Mr. Hamilton's prior counsel filed an unsuccessful Motion to Vacate.

\* \* \*

### Findings of Fact

The facts underlying the alleged violations are, for the most part, undisputed. Respondent admitted all of the facts set forth in Petitioner's Request for Admission of Facts and Genuineness of Documents, and the Court of Special Appeals issued an unreported decision following Respondent's appeal in the underlying case.

Respondent was admitted to the Bar of Maryland on September 30, 1993 and maintains a law office in Prince George's County. Respondent was also admitted to the Bar of the District of Columbia. Additionally, he has been a licensed real estate broker and developer in Maryland since 1968, and the broker for his own company, Geoplex Realty, since 1999.

On September 13, 2004, Respondent entered his appearance as Mr. Hamilton's counsel. Respondent thereafter entered into an agreement with his client to act as the broker for the purchase of the real property that was the subject of the partition action in which Respondent was counsel for Mr. Hamilton. The agreement provided that Respondent, through Geoplex Realty, would receive half of

the commission resulting from the sale. The commission was to be paid in lieu of attorney's fees.

Upon entering the case, Respondent filed a Motion to Set Aside and/or Vacate Default Judgment knowing that a previous Motion to Vacate Default Judgment had been denied. Opposing counsel, Todd Kelting, notified Respondent, via letter, that he did not deem the Motion to Set Aside and/or Vacate Default Judgment to be legally justified. On September 20, 2004, Ms. Johnson filed her first Request for Sanctions pursuant to Maryland Rule 1–341. On September 24, 2004, the Trustee filed a Motion to Compel Sale of the Property. These matters came before the trial court on Oct. 22, 2004. During the hearing, Respondent requested that his Motion to Set Aside and/or Vacate Default Judgment be considered a request for reconsideration. He further asked that Judge Dawson recuse himself from the case if sanctions were to be imposed, insofar as Judge Dawson had sanctioned Respondent "in just the recent past." Judge Dawson denied the recusation request, the Motion to Set Aside Default Judgment, and the oral motion to consider the Motion to Set Aside as a motion for reconsideration. He deemed the Motion to Set Aside and/or Vacate Judgment to be without basis and found that Respondent had filed the motion as a tactic to stall the proceedings. Respondent and Mr. Hamilton were jointly and severally sanctioned.

On November 1, 2004, Respondent filed a Motion to Alter or Amend Judgment and asked the court to compel the Trustee to sell the property in question to Mr. Hamilton. Respondent argued that the case law was unclear as to Mr. Hamilton's rights as a joint tenant, but proffered that, "Hamilton is entitled by right, as joint tenant, to settlement with Johnson if able to do so, prior to any third party purchase." [12] On November 5, 2004, Respondent filed a

---

**12.** Respondent cited *Dorsey v. Dorsey*, 30 Md. 522 (1869) and *Kelly v. Gilbert*, 78 Md. 431, 28 A. 274 (1894) in support of his argument that a joint tenant should be given a prioritized opportunity to purchase the

Motion to Stay Proceedings Below in the Court of Special
Appeals. On November 8, 2004, Ms. Johnson filed a second
Request for Sanctions Pursuant to Maryland Rule 1–341
asserting that Respondent's tactics were dilatory, meritless
and designed to impede Ms. Johnson's statutory right to sell
the property. Ms. Johnson opposed the Motion to Alter
and Amend Judgment and requested reasonable attorneys'
fees. In response, Respondent filed a Request for Sanc-
tions Pursuant to Maryland Rule 1–341, asserting that Mr.
Hamilton could purchase the property at the appraised
value if given the opportunity to refinance and that he
should not have to match a higher third party offer.

In the meantime, Respondent continued to engage in
negotiations with the Trustee. He entered into a contract
to close on the property by November 24, 2004. The
Trustee granted two extensions, but ultimately cancelled the
contract because Mr. Hamilton failed to obtain financing.
Ms. Johnson filed an Emergency Motion for Appropriate
and Expedited Relief asserting that Respondent's delay
tactics had prevented the Trustee from closing with third
party purchasers. On December 17, 2004, Respondent filed
an Emergency Motion to Allow Respondent Priority to
Settle with Trustee or to Stay Transfer Title to Third Party
Purchaser. The property had been appraised at
$228,000.00, but the Trustee received offers as high as
$259,000.00. Mr. Hamilton could not match the higher
offers.

On January 2, 2005, in response to charges that Respon-
dent was preventing the sale of the property, Respondent
filed a Motion for Trustee to Provide Appraisal. Respon-
dent asserted that the delay in selling the property was due
to the Trustee's failure to post a bond and provide an
appraisal per Maryland Rule 14–303. In a motion filed days
earlier, Ms. Johnson had requested that Mr. Hamilton be

---

real property. The Court of Special Appeals ruled that the cases were
not applicable.

held in contempt for preventing an appraiser from a third-party's prospective mortgagee from entering the property.

On January 25, 2005, after the Trustee had canceled Mr. Hamilton's contract, Respondent unilaterally scheduled a "sham" settlement on the property with a mortgage company. Respondent knew that the Trustee was out of the country on the date of "settlement" and that the Trustee had not approved the settlement. Respondent thereafter wrote to the Trustee and filed a Line with the court indicating that Mr. Hamilton had settled.

Judge Dawson heard argument on all outstanding motions on March 17, 2005. The court determined that Respondent's motions had been pursued in bad faith and without substantial justification and suggested that Respondent had become "too close" to Mr. Hamilton's proceedings. Sanctions were imposed against Respondent and Mr. Hamilton in the amount of $12,230.00 to cover Ms. Johnson's counsel fees.

On March 25, 2007, Respondent sent a letter to Judge Missouri, Administrative Judge for the Circuit Court of Prince George's County, without notice to opposing counsel or the Trustee, asserting that Respondent was precluded from filing appropriate motions regarding the property out of fear of being sanctioned. He concluded: "Please lead me in the proper direction within the confines of your Court so that justice may be done considering the status of this case."

On March 29, 2005, Respondent was notified that the Trustee had sold the property for $259,000.00. On May 3, 2005, the court ratified the sale. The Auditor's Report was entered on July 13, 2005.

Respondent noted an appeal. On September 19, 2005, he filed a brief with the Court of Special Appeals in which he challenged the sale and the sanctions. Respondent's brief misrepresented remarks made by Judge Dawson during the March 17, 2005 hearing, claiming that Judge Dawson had said that the judge was too close to the matter, when to the contrary, Judge Dawson had told Respondent that Respon-

dent might be too close to be objective. The Court of Special Appeals found that Respondent "misconstrued and twisted" Judge Dawson's words. It further held that the Trustee acted in accordance with his statutory duties, and noted that Respondent's "legal arguments [were] not presented in the context of the facts of this case, nor [did] he make an effort to apply the law, or invoke precedent to bolster his argument." The Court ruled that the Circuit Court had not erred in finding that Respondent violated Maryland Rule 1–341 and did not abuse its discretion in sanctioning Respondent, noting that "the evidence and inferences that can be reasonably drawn from the filing of these motions demonstrate appellant's bad faith and lack of substantial justification." The Court declined to address Respondent's argument that Mr. Hamilton should not have had to pay more than fifty percent (50%) of the equity in the real property insofar as Respondent had relied upon inapplicable law and had failed to present a lucid and substantial argument.

Respondent filed a Motion for Reconsideration on October 25, 2006 and a Petition for a Writ of Certiorari on December 26, 2006. Both were denied.

### Conclusions of Law

*Maryland Rules of Professional Conduct 1.1—Competence*

*A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.*

Whether a lawyer has employed the requisite knowledge and skill in a particular matter is determined by considering "relevant factors including the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question."

Respondent's trial performance in the underlying case, though less than cogent or well supported, did not rise to

the level of incompetence. Neither lack of preparation nor lack of thoroughness was to blame for the loss of Mr. Hamilton's home. Mr. Hamilton appears not to have had a defense to the sale of the property when Respondent was retained. Mr. Hamilton was nonetheless entitled to representation to ensure his rights were protected. In vigorously attempting to save his client's home, Respondent proffered a theory that a joint tenant is entitled to priority in purchasing the property and entitled to purchase the property for fifty (50%) percent of the appraised value. In pursuing this theory, Respondent relied upon inapplicable, though tangentially related, case law, while attempting to afford Mr. Hamilton an opportunity to purchase the property. Ultimately, Mr. Hamilton could not afford to purchase Ms. Johnson's interest in the property.

While Respondent's trial performance skirted the bounds of competent representation, his representation in the Court of Special Appeals cannot be deemed to have been competent. In the unreported decision in *Hamilton v. Johnson,* Court of Special Appeals, No. 468, September Term, 2005, Judge Davis wrote: "Preliminarily, we will discuss three of appellant's eight arguments based on his failure to present cogent and comprehensive arguments to support his position ... It is clear from the 'arguments' set forth above by appellant that he presents nothing more than legal references and conclusions to support his position. His arguments above are not presented in the context of facts of this case, nor does he make an effort to apply the law, or invoke precedent to bolster his argument ... We decline to address issues three, four, and five of appellant's brief for failure to provide support." In declining to consider Respondent's contention that Mr. Hamilton was entitled to purchase the property for fifty percent (50%) of the appraised value, Judge Davis wrote, "In light of our finding that appellant's reliance on *Dorsey* and *Kelly* is misplaced and the cases inapplicable, *see* III. B. *supra,* and appellant's failure once again to present a lucid and substantial argument, we decline to address this issue on the merits."

12

Considering Respondent's performance as a whole, this Court finds that Respondent violated MRPC 1.1.

*Maryland Rules of Professional Conduct 1.7(b)—Conflict*

Rule 1.7(b) provides in pertinent part that except as otherwise provided, *a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if there is a significant risk that the representation of one or more clients will be materially limited by a personal interest of the lawyer. Notwithstanding the existence of a concurrent conflict of interest under the Rule, a lawyer may represent a client if:*

*(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;*

*(2) the representation is not prohibited by law;*

*(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and*

*(4) each affected client gives informed consent, confirmed in writing.*

Petitioner contended that Respondent's dual role as Mr. Hamilton's real estate broker and attorney for the disputed sale of the property constituted a conflict of interest. Respondent countered that Mr. Hamilton entered into the agreement with Geoplex Realty as a convenience, insofar as any broker's fees earned from the sale of the property were to be applied to Mr. Hamilton's attorney's fees.

Respondent reasonably believed that he could provide competent and diligent representation while also serving as his client's real estate broker. There was no evidence that Respondent's performance was colored by the fact that his fees, which would presumably be owed regardless of whether Respondent served as the real estate broker, would be paid in part from the proceeds from the property. Petitioner did not contend that Respondent violated any law by

employing his firm as the intended broker for the sale of the property. There was no showing that Respondent's role as broker posed a significant risk of materially limiting his ability to consider, recommend or carry out an appropriate course of action for his client, nor that it prohibited his ability to give detached legal advice.

Petitioner did not establish by clear and convincing evidence that Respondent violated MRPC 1.7(b).

*Maryland Rules of Professional Conduct 3.1—Meritorious Claim*

*A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.*

Respondent was sanctioned at both the October 22, 2004 and March 17, 2005 hearings for violating Maryland Rule 1–341. The Court of Special Appeals sustained the sanctions. While not dispositive, sanctions imposed by other tribunals may be considered in deciding whether MRPC 3.1 has been violated.

Respondent was advised at the October 22, 2004 hearing that his arguments had no merit. Despite this, he continued to file motions relying on the same facts, same argument and same legal theory. Respondent had no basis for filing the Motion to Set Aside and/or Vacate Default Judgment, the Motion to Compel Sale of the Property, Motion to Alter or Amend Judgment, Request for Sanctions Pursuant to Maryland Rule 1–341, or the Emergency Motion to Allow Respondent Priority to Settle with Trustee or to Stay Transfer Title to Third Party Purchaser. Accordingly, it was established by clear and convincing evidence that Respondent violated MRPC 3.1.

*Maryland Rules of Professional Conduct 3.2—Expediting Litigation*

*A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.*

Respondent employed dilatory tactics, including unwarranted motions and false representations that settlement had occurred, to prevent the sale of the property, thereby frustrating the opposing party's attempt to obtain rightful redress. Petitioner established by clear and convincing evidence that Respondent violated MRPC 3.2.

*Maryland Rules of Professional Conduct 3.3(a)—Candor Towards the Tribunal*

*A lawyer shall not knowingly:*

*(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;*

*(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or*

*(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.*

A lawyer must avoid conduct that undermines the integrity of the adjudicative process and must not allow the tribunal to be misled by false statements of law or fact that he knows to be false.

Respondent knowingly made false statements when representing that settlement had occurred. As well, Respondent relied on misleading statements of fact regarding Judge Dawson when appealing the sanctions imposed by the trial judge. Respondent knew or should have known that these representations were false.

Petitioner established by clear and convincing evidence that Respondent violated MRPC 3.3(a).

*Maryland Rules of Professional Conduct 4.4(a)—Respect for Rights of Third Persons*

> *In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.*

A lawyer's responsibility to his client does not imply that he may disregard the rights of third persons. While there was no suggestion that Respondent's tactics were intended to injure Ms. Johnson nor that he or his client bore any ill-will towards Ms. Johnson, his actions were pursued in total disregard for their substantial cost to Ms. Johnson, were intentionally dilatory and were without legal basis. While Respondent's goal was to enable his client to purchase the jointly held property, his tactics clearly and convincingly constituted a violation of MRPC 4.4(a).

*Maryland Rules of Professional Conduct 8.2(a)—Judicial and Legal Officials*

> *A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.*

Petitioner pointed to Respondent's March 25, 2005 letter to Judge Missouri and Appellant's Brief in support of its contention that Respondent violated MRPC 8.2(a).

The letter to Judge Missouri, while an inappropriate appeal, did not impugn Judge Dawson's qualifications or integrity.

On the other hand, Respondent's brief included statements regarding Judge Dawson's integrity which were known to be false or were made with reckless disregard for the truth. As the Court of Special Appeals opined after evaluating Respondent's contention that Judge Dawson had "admitted in open court that he 'was too close to the case',"

Respondent "adroitly misconstrue[d] and twist[ed] the words of the court to create an argument or statement that was not initially iterated." Respondent's brief further asserted that Judge Dawson had admitted in open court that he disliked Respondent and then improperly refused to recuse himself. Judge Dawson made no such comments.

While Respondent may have had a good faith belief that Judge Dawson did not like him, the use of misleading statements to support the assertion that Judge Dawson was motivated by personal bias improperly called the judge's integrity into question. Accordingly, it was established by clear and convincing evidence that Respondent violated MRPC 8.2(a).

*Maryland Rules of Professional Conduct 8.4(c)—Misconduct*

*It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.*

Respondent advised the Court that his client had settled on the disputed property when he had not. He further misrepresented Judge Dawson's words in the appellate brief. Accordingly, it has been established by clear and convincing evidence that Respondent violated MRPC 8.4(c).

*Maryland Rules of Professional conduct 8.4(d)—Misconduct*

*It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.*

Conduct that reflects negatively on the legal profession and sets a bad example for the public at large is prejudicial to the administration of justice. Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice.

Respondent's frivolous motions, intentionally dilatory tactics, and misrepresentations were prejudicial to the administration of justice. While Respondent no doubt was motivated by commitment to his client, rather than enmity for Ms.

Johnson or antipathy for the legal system, the result was prejudicial to the administration of justice in violation of MRPC 8.4(d).

\*    \*    \*

*Mitigation*

Respondent did not act with dishonest or selfish motives, nor with intent to hurt Ms. Johnson. He apparently thought he could achieve his client's ends, acquisition of the jointly titled property in which his client resided, without depriving Ms. Johnson of fair compensation. Respondent's legal arguments, while not supported by the case law, cited or otherwise, were proffered with the intent of convincing the court that a party with an existing interest in property should be afforded the right to purchase the property as long as the party offers a purchase price consistent with the appraised value, even if a higher offer has otherwise been submitted. Unfortunately, Responded pursued this theory inappropriately, with the consequences cited above.

(Emphasis in original).

Neither Respondent nor Bar Counsel filed exceptions to the hearing court's findings of fact or conclusions of law.

### STANDARD OF REVIEW

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance Comm'n v. Zuckerman*, 403 Md. 695, 709, 944 A.2d 525, 534 (2008); *Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 632, 934 A.2d 1, 12 (2007); *Attorney Grievance Comm'n v. Lawson*, 401 Md. 536, 571–72, 933 A.2d 842, 863 (2007). We review the hearing judge's conclusions of law de novo. Md. Rule 16–759(b); [13] *Attorney Grievance Comm'n v. Kreamer*, 404 Md.

---

**13.** Md. Rule 16–759(b) provides:

(b) Review by Court of Appeals.

(1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

282, 292, 946 A.2d 500, 506 (2008); *Attorney Grievance Comm'n v. Parsons*, 404 Md. 175, 184, 946 A.2d 437, 443 (2008). As neither party has filed exceptions, we treat the findings of fact as established for the purpose of determining the appropriate sanction, if any. Md. Rule 16–759(b); *Attorney Grievance Comm'n v. Elmendorf*, 404 Md. 353, 360, 946 A.2d 542, 546 (2008).

## *DISCUSSION*

Upon reviewing the record, we determine that the hearing judge's conclusions of law are supported by clear and convincing evidence. We therefore turn to the task of determining the appropriate sanction for Respondent's violations of the MRPC. Bar Counsel recommends that Respondent be disbarred. Respondent recommends a ninety day suspension as the appropriate sanction, because he was not motivated by personal gain, but rather an overzealous desire to protect his client's interests.

Bar Counsel points to Respondent's false and misleading statements to the Circuit Court and the Court of Special Appeals, and our decision in *Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 75, 930 A.2d 328, 348 (2007), where we noted that the ultimate sanction of disbarment was appropriate for violations involving dishonesty, fraud, or deceit. In addition to the violations currently before this Court, Bar Counsel points to Respondent's prior sanctions imposed by this Court. On February 24, 2003, Respondent was suspended from the practice of law for thirty days for his failure to properly hold client funds in trust, and failing to appropriately

---

(2) Findings of Fact.

(A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

designate his attorney trust account. On October 30, 2005, Respondent was suspended for ninety days, by consent, for violations of MRPC 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3 (Candor Toward the Tribunal), and 8.4(d) (Conduct Prejudicial to the Administration of Justice).

We have said that the purpose of attorney discipline proceedings is to maintain the integrity of the legal profession, protect the public, and deter further violations of the MRPC by other attorneys. *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005). We determine the appropriate sanction for violations of the MRPC based on the individual facts and circumstances of each case. *Id.* With regard to the sanction for violations involving dishonesty, this Court has said:

> [u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in any attorney's character. Disbarment ordinarily should be the sanction for intentional dishonest conduct.

*Siskind,* 401 Md. at 75, 930 A.2d at 348.

Furthermore, "[o]nly in the case of compelling extenuating circumstances 'will we even consider imposing less than the most severe sanction of disbarment' in cases involving dishonesty and fraudulent conduct." *Attorney Grievance Comm'n v. Goodman,* 381 Md. 480, 499, 850 A.2d 1157, 1168 (2004) (quoting *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 414, 773 A.2d 463, 485 (2001)). In *Vanderlinde,* we went on to say that, in such cases,

> we will not accept, as "compelling extenuating circumstances," anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the "root cause" of the misconduct *and* that also result in an attorney's utter inability to

conform his or her conduct in accordance with the law and with the MRPC.

364 Md. at 413–14, 773 A.2d at 485. *Vanderlinde*
is a seminal case, in that it sought to return some measure of consistency to the analysis of sanctions in intentional dishonesty cases. After documenting the tortured and sometimes inexplicable "all-over-the-ballpark" array of sanctions in cases of attorney dishonesty that preceded it, *Vanderlinde* endeavored to restore a principal, guiding star for the sanctions in such cases.

*Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 597, 876 A.2d 642, 661 (2005); *see also In re Pennington,* 921 A.2d 135, 140 (D.C.2007) (noting that Pennington's disbarment in Maryland "was dictated by what amounts to a presumption under Maryland law that an attorney who engages in intentional dishonesty will be disbarred").

In *Goodman,* we imposed the sanction of disbarment because an attorney filed pleadings and signed the name of a different attorney without that attorney's knowledge or permission. 381 Md. at 483, 499, 850 A.2d at 1159, 1168. In addition, Mr. Goodman negotiated a settlement with opposing counsel, while pretending to be this other attorney, and also attempted to mislead the trial judge about his (Mr. Goodman's) identity. *Goodman,* 381 Md. at 483, 850 A.2d at 1159. We reasoned that disbarment was the appropriate sanction, in part, because "a lawyer's act of dishonesty, fraud, or deceit might cause the public to lose confidence in other lawyers and the judicial system as a whole." *Goodman,* 381 Md. at 498, 850 A.2d at 1168 (quoting *Attorney Grievance Comm'n v. White,* 354 Md. 346, 364, 731 A.2d 447, 457 (1999)).

■ While, in this case, the hearing judge found that Respondent was motivated by a desire to further his client's interests, and not a desire to harm Ms. Johnson, we cannot say that his intent, without more, is compelling enough for us to impose less of a sanction than disbarment in this case. Respondent was intentionally dishonest with both the Circuit Court and the Court of Special Appeals, and, as we have noted previously, "intentional dishonest conduct is closely entwined

with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Vanderlinde*, 364 Md. at 418, 773 A.2d at 488. Furthermore, Respondent went so far as to create a "sham" settlement, at a time he knew the Trustee was out of the country, and indicated to the court that his client had settled. This shows a systematic effort by the Respondent to mislead the court. Given Respondent's history of sanctions before this Court for violating the MRPC, it appears that Respondent has shown an ongoing disregard for the MRPC.

In light of these facts, therefore, we impose the sanction of disbarment.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COST OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761 FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES E. MCCLAIN, SR.**

Chief Judge BELL and Judge ELDRIDGE would impose an indefinite suspension rather than disbarment as the appropriate sanction.