*Attorney Grievance Commission v. Maurice Marnea Moody*, Misc. Docket AG No. 38, September Term 2016.  Opinion by Hotten, J.

**ATTORNEY DISCIPLINE - SANCTIONS - DISBARMENT**
Maryland Court of Appeals disbarred from practice of law an attorney who intentionally failed to keep client property secured; commingled client funds; failed to keep adequate records regarding deposits, disbursements and payments to third parties; made prohibited transactions from client trust account; and made intentional misrepresentations to Bar Counsel during a lawful investigation.  Such conduct violated former Maryland Lawyer's Rules of Professional Conduct ("MLRPC") 1.15 (Safekeeping Property), 8.1 (Bar Admission and Disciplinary Matters), 8.4 (Professional Misconduct), and Maryland Rules 16-606.1 (Attorney Account Record-Keeping), 16-607 (Commingling Funds), and 16-609 (Prohibited Transactions).

Circuit Court for Baltimore County
Case No. 03-C-16-010220
Argued: September 12, 2017

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 38

September Term, 2016

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

MAURICE MARNEA MOODY

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: December 20, 2017

Respondent, Maurice Marnea Moody, gained admission to the Bar of Maryland on June 5, 1996. On June 22, 2016, the Attorney Grievance Commission ("the Commission" or "Petitioner"), through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent. Bar Counsel charged Respondent with violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and the Maryland Rules governing attorney trust accounts. Specifically, Bar Counsel alleged that Respondent violated the following provisions: MLRPC: 1.15 (Safekeeping Property), 8.1 (Bar Admission and Disciplinary Matters), 8.4 (Professional Misconduct), Maryland Rules 16-606.1 (Attorney Account Record-Keeping), 16-607 (Commingling Funds), and 16-609 (Prohibited Transactions).[1]

This Court transferred the case to the Circuit Court for Baltimore County on September 29, 2016, for fact-finding proceedings. On October 5, 2016, Petitioner was unable to serve the summons on Respondent prior to its expiration. The clerk reissued the summons and the Client Protection Fund ("CPF") served the summons on Respondent on December 13, 2016. At that time, the CPF provided Respondent with the Petition, transmittal order, and summons at three different addresses. Respondent's Answer to the Petition were due on January 3, 2017. On January 6, 2017, the circuit court entered a

---

[1] Effective July 1, 2016, the Maryland Rules were revised. The MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") renumbered. Rules Order (June 6, 2016). The revised rules are now numbered as follows: MLRPC 19-301.15(a) (Safekeeping Property), MLRPC 19-308.1 (Bar Admission and Disciplinary Matters), MLRPC 19-308.4 (Professional Misconduct). The Maryland Rules are now numbered as 19-407 (Attorney Account Record-Keeping), 19-408 (Commingling Funds), and 19-410 (Prohibited Transactions).

Default Judgment against the Respondent, because he failed to file a timely answer. On that same day, the court scheduled a hearing for February 9, 2017, and the Respondent failed to appear. Subsequently, on February 23, 2017, Respondent filed a Motion to Vacate the Default Judgment, which Petitioner opposed. The circuit court ultimately denied the Respondent's Motion on February 28, 2017.

The hearing judge rescheduled the matter for March 1, 2017. On that day, Respondent failed to attend also failing to respond to Petitioner's discovery requests. Therefore, Pursuant to Maryland Rule 2-424, the hearing judge admitted into evidence Petitioner's Request for Admissions of Fact and Genuineness of Documents along with other documents obtained throughout the investigation. Thereafter, the hearing judge issued written findings of fact and proposed conclusions of law, concluding that Respondent had in fact violated MLRPC 1.15, 8.1, 8.4(d), and Maryland Rules 16-606.1, 16-607, and 16-609. Respondent filed no exceptions and there was no recommendation regarding the appropriate sanction. Petitioner recommended disbarment. Following oral argument, this Court issued a *per curiam* order disbarring Respondent. This opinion details the rationale for our decision.

## I.
### A. The Hearing Judge's Findings of Fact

On June 5, 1996, Respondent gained admission to the Maryland Bar. On June 29, 2004, this Court ordered, by consent, that Respondent receive a 90-day suspension for violations of the then-named MLRPC 1.1, 1.3, 1.4, 1.16(d), 8.1(b), and 8.4(d). The facts

presented demonstrated that Respondent failed to attend a hearing during a child support case, failed to file a post-conviction petition, failed to obtain service of process in a divorce case, and failed to timely file a claim for uninsured motorist benefits. On January 11, 2005, Respondent was reinstated after serving the suspension.

In December 2014, Respondent received a Commission reprimand due to his failure to maintain adequate records regarding his attorney trust account, resulting in an overdraft from that account. Respondent also commingled client and third-party funds, resulting in a violation of MLRPC 1.15(a). Specifically, the reprimand stemmed from Respondent's failure to withdraw earned fees promptly from his attorney trust account. Consequently, Respondent was required to meet with a Commission Investigator, and review the accounting rules and a DVD explaining Escrow Management.

Regarding the instant Petition, the Commission received a notice from M&T Bank on January 20, 2015, referring to a January 14, 2015 overdraft of Respondent's trust account. The notice revealed that Check No. 1033 in the amount of $104.00 was presented for payment, but the account did not contain sufficient funds to cover the check, which resulted in an overdraft in the amount of $26.79. Thereafter on January 27, 2015, Bar Counsel sent letters to Respondent, both by regular and certified mail, seeking an explanation for the overdraft, requesting that Respondent produce copies of his trust account records from November 2014 until January 2015. Respondent replied to Bar Counsel's letter on or about February 5, 2017, but failed to produce the records.

3

On April 22, 2015, Bar Counsel sent a letter to Respondent, again requesting copies of his trust account bank records. On May 6, 2015, Bar Counsel received a copy of Respondent's ledger titled "Check Register for Attorney Trust Account" ("Check Register"). Additionally, Bar Counsel received copies of Respondent's client ledgers, checks, deposit slips, and bank statements for the period between November 2014 and January 2015. Bar Counsel sought an admission of fact from Respondent that he had prepared and reviewed his check register for accuracy. Respondent did not respond to Bar Counsel's request, thereby admitting that he prepared and reviewed his check register for accuracy. *See* Md. Rule 2-424(b).

Bar Counsel noted several discrepancies reflecting attorney misconduct. Specifically, Respondent's Check Register provided that Check No. 0055, in the amount of $7,850.60, was made payable to USAA for his client B. Jackson for medical services. However, a copy of Check No. 0055 revealed that the check was made payable to the Respondent. Respondent's Check Register also indicated that Check No. 1024, in the amount of $1,050.00, was made payable to Will Mcines for his client, S. Jones, for medical services. Further, the Client Ledger Card for S. Jones listed Will Mcines, MD, as a medical provider in relation to her personal injury matter. In addition, the Client Ledger Card for M. Jones also indicated that Respondent issued a check payable to Will Mcines, MD for $1,050.00. Further investigation revealed that Will Mcines was not a physician, medical professional, or medical provider, but instead, was Respondent's landlord from whom

Respondent rented office space. As a result, Bar Counsel concluded that the Check Register and Client Card entries were fraudulent.

Respondent's Check Register provided that both Check No. 1027, in the amount of $750.00, and Check No. 1041, in the amount of $300.00, were made payable to Respondent, for his client, L. Jones, for fees. However, further investigation revealed that this entry was fraudulent and that Respondent's Client Ledger Card for L. Jones showed that the fee was in fact $1,650.00, not the $1,050.00 that Respondent paid from his trust account. Further, with regard to S. Jones, Respondent's Check Register provided that Check No. 1029, in the amount of $500.00, Check No. 1039, in the amount of $1,000.00, and Check No. 1040, in the amount of $600.00, were made payable to Respondent for fees totaling $2,100.00. However, the Client Ledger Card for S. Jones indicated that Respondent received $2,164.00 for fees. Moreover, Respondent's Disbursement Sheet for S. Jones listed the fee as $2,000.00, an amount contradicting the other records. These irregularities reflected a pattern of improper record keeping that resulted in erroneous fee payments.

Through its investigation, Bar Counsel also identified additional discrepancies in Respondent's accounting for L. Jones. Specifically, the Check Register listed that Respondent issued Check No. 1030, in the amount of $459.00, on behalf of L. Jones to Maryland Healthcare Clinics ("MHC") for medical services. However, the Client Ledger Card indicated that Respondent paid $984.00 to MHC for L. Jones' fees. A copy of the check showed conclusively that MHC was in fact only paid $459.00 on behalf of L. Jones

5

for medical services. Next, the Check Register indicated that Respondent issued Check No. 1038, in the amount of $688.00 to L. Jones for the settlement of the Jones matter. A copy of Check No. 1038 matched the Check Register but the Client Ledger Card for L. Jones indicated that the amount of settlement disbursed to L. Jones was actually $2,688.00.

In addition to the above discrepancies, the hearing judge also found violations with regard to the representation of M. Brice. Respondent's Check Register reflected that Check No. 1043, dated December 20, 2014 in the amount of $500.00, and Check No. 0055, dated January 7, 2015 in the amount of $600.00, were both made payable to Respondent for fees totaling $1,100. The Respondent's Client Ledger Card, however, reflected that, as of April 22, 2015, Respondent's fee for representing M. Brice was $1,022.00 and that as of July 14, 2015, the fee was $2,072.00. The Client Ledger Card also reflected that $1,050.00 was paid to Mr. Mcines, the Respondent's landlord and was not on behalf of M. Brice. The Check Register also reflected that on December 25, 2014, Respondent wrote Check No. 055, for $500.00, on behalf of M. Brice to MHC for medical services. An actual copy of Check No. 055, dated December 24, 2014, showed that it was in fact made payable to Respondent for $500.00. Notably, the Client Ledger Cards for M. Brice reflected that as of July 14, 2015, Mr. Brice had an outstanding bill of $1,828.00, owed to MHC. The Disbursement Sheet for M. Brice reflected, however, that Mr. Brice's bill from MHC was only $1,728.00.

The hearing judge found a final instance of subpar accounting practices in the case of Respondent's representation of B. Jones. The Check Register indicated that Respondent

6

wrote Check No. 1042 for $1,000.00 on January 26, 2015 to himself for fees. The Client Ledger Card for B. Jones reflected however, that Respondent was due $2,212.00 for representation of B. Jones.

On July 1, 2015, Bar Counsel sent a letter to Respondent requesting an explanation regarding the payments to Will Mcines, MD on behalf of S. Jones and M. Brice. On July 16, 2015, Bar Counsel received a letter from Respondent, dated July 14, 2015 that included a copy of a revised Check Register for Respondent's Trust Account ("Second Check Register") and a revised Client Ledger Card for M. Brice. Bar Counsel again requested that Respondent admit that he prepared the Second Check Register and the revised Client Ledger Card for Mr. Brice. Respondent again failed to respond to the requests, thereby admitting them. The hearing judge subsequently concluded that Respondent's Second Check Register contained false or incorrect information, in comparison to copies of actual checks and bank statements received from Respondent's attorney trust account. See Md. Rule 2-424(b).

In the Second Check Register, Respondent represented that he issued Check No. 0055 dated December 24, 2014 for $500.00 to medical provider MHC on behalf of M. Brice. A copy of the check revealed that it was made payable to Respondent. The Second Check Register also represented that Respondent wrote a check on December 7, 2014, to USAA on behalf of B. Jackson for $1,050.00. The bank records contained a copy of a check, which showed that Respondent issued the check again to Will Mcines. The hearing judge also stated that Respondent's Client Ledger Card for B. Jackson revealed that

7

Respondent claimed a fee of $10,000.00, but Respondent's Disbursement Sheet, claimed that his fee in the matter was $12,870.00.

On or about July 31, 2015, Bar Counsel issued subpoenas to M&T Bank and Respondent, seeking complete records of Respondent's attorney trust account for the period between January 2013 and July 31, 2015. Bar Counsel analyzed the records, which revealed discrepancies and misrepresentations by Respondent concerning the amounts of various checks and the identities of various payees in both Check Registers and Client Ledgers. As a result, on July 22, 2015, Bar Counsel directed Respondent to provide his complete files for B. Jackson, M. Brice, S. Jones, B. Jones, and L. Jones. Respondent complied on August 15, 2015.

The August 15, 2015, Client Ledger Cards and Settlement Statements for the above referenced clients contained different information regarding payees and check amounts when compared against Respondent's May 6, 2015 disclosure. Entries on the Client Ledger Cards and Settlement Statements were also inconsistent with the attorney trust account records received from M&T Bank. For example, S. Jones received a settlement check from GEICO Insurance Co. in the amount of $6,500.00, but the Client Ledger Card and Settlement Statement provided by Respondent reflected the following disbursements: (1) $2,000.00 to Respondent; (2) $1,362.00 to MHC; and (3) $3,138.00 to S. Jones. However, the bank records from Respondent's trust account reflected the following: (1) Check No. 1031 to S. Jones for $3,138.00; (2) Check No. 1026 to Will Mcines for $1,050.00; (3) Check No. 1039 to Respondent for $1,000.00; and (4) Check No. 1040 to

8

Respondent for $600.00, totaling $5,788.00. The bank records did not reflect any payment to either MHC for $1,362.00 on behalf of S. Jones.

On January 8, 2016, Bar Counsel received a fax from Respondent dated January 1, 2006. The hearing judge noted that the 2006 date listed was likely an error. Nonetheless, the fax consisted of a cover sheet with a handwritten note from Respondent and a three-page document titled "Check Register for Attorney Trust Account" ("Third Check Register"). Bar Counsel again sought an admission from Respondent that he had prepared and reviewed the Third Check Register for accuracy, but Respondent again failed to respond. As such, the hearing judge treated those facts as conclusively admitted. See Md. Rule 2-424(b). In the Third Check Register, Respondent indicated that he wrote Check No. 55, dated November 19, 2014, for $7,850.60, on behalf of B. Jackson to Medical Providers for services provided to B. Jackson. The actual copy of Check No. 55, dated November 19, 2014 was in fact made payable to Respondent, for a total amount of $7,850.60.

The Client Ledger Card for B. Jackson reflected that Respondent's fee for representation was $10,000.00 and that the client had outstanding medical bills for $7,503.60. The Disbursement Sheet for B. Jackson reflected, however, that the fee for representation was $12,870.00. The Disbursement Sheet also reflected that B. Jackson's medical expenses totaled $8,464.00. The Third Check Register further showed that on December 7, 2014, Respondent wrote a check with an unknown number. The check purported to be on behalf of "B. Jack/Jones to M. Moody for fees ($500.00)/ S. Jones

9

($550.00) to (W.E.) $1,050.00." Respondent's bank records however do not reflect a check dated December 7, 2014 paid to Respondent. The Third Check Register also contained an inaccurate entry concerning Check No. 55.

## B. The Hearing Judge's Conclusions of Law

Based on the above findings of fact, the hearing judge found, by clear and convincing evidence, that Respondent violated the following provisions of MLRPC: 1.15 (Safekeeping Property), 8.1 (Bar Admission and Disciplinary Matters), 8.4 (Professional Misconduct). The hearing judge also determined that Respondent violated Maryland Rules 16-606.1 (Attorney Account Record-Keeping), 16-607 (Commingling Funds), and 16-609 (Prohibited Transactions).

### MLRPC 1.15: Safekeeping Property

MLRPC 1.15(a) provides that:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

The hearing judge noted that in *Attorney Grievance Commission of Maryland v. Hamilton*, we explained that MLRPC l. l 5(a) requires an attorney to keep the property of clients separate from the lawyer's own property. 444 Md. 163, 188, 118 A.3d 958, at 972 (2015). Additionally, in *Attorney Grievance Commission of Maryland v. Zuckerman*, we

10

found that the respondent violated MLRPC 1.15(a) when he failed to keep client funds in a separate account and concluded that even an unintended violation of MLRPC 1.15 constitutes a violation of the attorney's duties under the rule.  386 Md. 341, 359, 872 A.2d 693, at 704 (2005).

The hearing judge concluded that Respondent violated MLRPC 1.15(a) by continuously failing to maintain an accurate accounting of client funds.  The hearing judge also determined that Respondent's actions illustrated a pattern of negligent and deceitful accounting practices, laden with gross inconsistencies between Respondent's Check Register and copies of checks, client ledgers, and bank records.  The hearing judge also noted that, on multiple occasions, Respondent indicated in his Check Register that a check was payable to a medical provider or third party when, in fact, the check was payable to himself.  The hearing judge further observed that there were several instances where the fee that was indicated in the Client's Ledger Card or Disbursement Sheet differed from what Respondent actually disbursed to himself.

### MLRPC 8.1: Bar Admission and Disciplinary Matters

MLRPC 8.1 provides that:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

The hearing judge concluded that throughout Bar Counsel's investigation, Respondent provided three separate check registers, each containing contradictory information. The hearing judge also noted that Respondent's repeated failure to respond to discovery permitted the court to conclude that Respondent had reviewed each of the check registers for accuracy. Respondent did not offer any mitigating evidence regarding why he supplied Bar Counsel with erroneous and conflicting check registers and failed to appear for any proceeding regarding this matter. Accordingly, the hearing judge concluded that Respondent violated Rule 8.1(a) by knowingly making a false statement to Bar Counsel in connection with a disciplinary matter. It is important to note at this point that the hearing judge acknowledged that Bar Counsel voluntarily withdrew a charge against Respondent for violating Rule 8.1(b).

MLRPC 8.4: Professional Misconduct

MLRPC 8.4 states:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of
    Professional Conduct, knowingly assist or induce another to do so, or do
    so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty,
    trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or
    misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;

The hearing judge stated that any violation of the MLRPC constituted a violation of MLRPC 8.4(a). *See generally Attorney Grievance Commission v. Landeo*, 446 Md. 294, 132 A.3d 196, (2016). The hearing judge concluded that because it found that Respondent has violated MLRPC 1.15(a) and MLRPC 8.4(c)-(d), Respondent violated 8.4 (a). The

12

hearing judge acknowledged that Bar Counsel voluntarily withdrew a charge that Respondent violated 8.4(b).

The hearing judge further concluded that Respondent violated subsection (c) by submitting false client ledgers and settlement sheets to Bar Counsel, which the hearing judge determined was conduct involving dishonesty, fraud, deceit, or misrepresentation. The hearing judge also found that Respondent wrote a check to his landlord, presumably for a rental payment, and inserted the letters "M.D." to make the check appear to be issued to a physician for his client's treatment. The hearing judge concluded that Respondent's conduct was intentionally deceitful and dishonest, not merely negligent. *See Attorney Grievance Commission of Maryland v. Mahone*, 451 Md. 25, 43, 150 A.3d 870, 882 (2016), (discussing the distinctions between negligent and fraudulent handling of attorney trust accounts and why mere negligence does not constitute a violation of Rule 8.4(c)).

The hearing judge noted that an attorney commits professional misconduct in violation of 8.4(d) when the conduct at issue is likely to impair public confidence in the profession, affect the image of the legal profession, and engender disrespect for the court. *See Attorney Grievance Commission of Maryland v. Childress,* 360 Md. 373, 381-82, 758 A.2d 117, 121 (2000). The hearing judge also asserted that in *Mahone*, we held that an attorney who violated MLRPC 1.1, 8.1(b), 8.4(a) and (d) and Rules 16-606.1, 16-607, 16-609 and Business Occupations & Professions §10-306 by failing to properly use and maintain records for his attorney trust account, thereby violated Rule 8.4(d). 451 Md. at 43, 150 A.3d at 882. The *Mahone* Court held that such conduct was prejudicial to the

13

administration of justice because it harmed the reputation of the legal profession. Similarly here, the hearing judge concluded that Respondent's conduct harmed the reputation of the legal profession and, therefore, his haphazard and deceitful accounting practices, coupled with his knowing misrepresentations to Bar Counsel, constituted a violation of MLRPC 8.4(d).

Md. Rule 16-601.: Attorney Trust Account Record-Keeping

Md. Rule 16-606.1 provided that:

(a) **Creation of Records**. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

    (1) *Attorney Trust Account Identification*. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

    (2) *Deposits and Disbursements*. A record for each account that chronologically shows all deposits and disbursements, as follows:

        (A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

        (B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

        (C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

*　　*　　*

14

(3) *Client Matter Records*. A record for each client matter in which the attorney receives funds in trust, as follows:

    (A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

    (B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(4) *Record of Funds of the Attorney*. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16-607 b.

(b) **Monthly Reconciliation**. An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 16-607 b, and the adjusted month-end financial institution statement balance. The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

(c) **Electronic Records**. Whenever the records required by this Rule are created or maintained using electronic means, there must be an ability to print a paper copy of the records upon a reasonable request to do so.

(d) **Records to Be Maintained**. Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial institution, and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the date the record was created.

The hearing judge concluded that Respondent failed to maintain his records in accordance with Rule 16-606.1. The hearing judge noted that Respondent failed to create for each disbursement an accurate record that was made at or near the time of disbursement that showed: "(i) the date of disbursement; (ii) the amount; (iii) the payee; (iv) the identity

15

of the client or third person for whom the disbursement was made (if not the payee); and (v) the purpose of the disbursement." *See* Md. Rule 16- 606.1(a)(2)(B).

The hearing judge also concluded that Respondent failed to create an account record for each client matter connected to funds in the attorney trust account. The hearing judge noted that for each attorney trust account transaction referenced, *supra*, Respondent failed to accurately maintain a record showing: "(i) the date of the deposit or disbursement, (ii) the amount of the deposit or disbursement, (iii) the purpose for which the funds are intended, (iv) for a disbursement, the payee and the check number or other payment identification, and (v) the balance of funds remaining in the account in connection with the matter," and "an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client." *See* Md. Rule 16- 606.1(a)(3).

### Md. Rule 16-607: Commingling of Funds

Md. Rule 16-607 provided that:

(a) **General Prohibition**. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule.

(b) **Exceptions**.
  (1) An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16-610(b)(1)(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

16

(2) An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

(3) Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

The hearing judge concluded that Respondent had failed to maintain his funds and those of his clients' in accordance with Md. Rule 16-607. The hearing judge noted that Respondent violated the Rule when he commingled his personal funds with client funds. *See Mahone*, 451 Md. at 43, 150 A.3d at 882. The hearing judge also determined that Respondent's persistent accounting errors resulted in him withdrawing less than that which he claimed he earned on his client disbursement sheets. The hearing judge further concluded that Respondent did not promptly withdraw the portion of the clients' funds that belonged to him or his law firm, and instead, allowed the money to remain in the account. The hearing judge also found that Respondent issued a check out of his trust account to Will Mcines, MD, under the pretext that it was related to a client's medical expense when, in reality, it was actually to pay Respondent's landlord.

### Md. Rule 16-609 Prohibited Transactions

Md. Rule 16-609 stated:

(a) **Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

(b) **No Cash Disbursements**. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash

withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

(c) **Negative Balance Prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

The hearing judge noted that when an attorney uses "trust account funds for an unauthorized purpose . . . and create[s] negative balances" he violates Md. Rule 16-409; *see Mahone*, 451 Md. at 43 150 A.3d at 882. The hearing judge concluded that Respondent violated Md. Rule 16-409(a) and (c) by using funds from his attorney trust account to pay his landlord and by creating a negative balance in his trust account.

## C. The hearing judge's finding of aggravating factors

The hearing judge noted that in *Attorney Grievance Commission of Maryland v. Shuler*, we held that, in determining an appropriate sanction for a lawyer's misconduct, we consider: "(1) the Rules that the lawyer violated, (2) the lawyer's mental state, (3) the injury that the lawyer's misconduct caused or could have caused, and (4) aggravating factors and/or mitigating factors." 443 Md. 494, 506, 117 A.3d 38, at 46 (2015), (citation omitted). We also noted in *Shuler* that "[a]ggravating factors include: (1) prior attorney discipline, (2) a dishonest or selfish motive, (3) a pattern of misconduct, (4) multiple violations of the Rules of Professional Conduct, (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge, (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding, (7) a refusal to acknowledge the misconduct's wrongful nature, (8) the victim's vulnerability, (9) substantial experience

18

in the practice of law, (10) indifference to making restitution or rectifying the misconduct's consequences, (11) illegal conduct, including that involving the use of controlled substances, and (12) likelihood of repetition of the misconduct." *Id*. at 506-07, 117 A.3d at 46. The hearing judge concluded that in the case at bar, the following aggravating factors are present: (1), (3), (4), (5), (6), (7), (9), and (12).

Addressing the first aggravating factor, the hearing judge noted that Respondent received a 90-day suspension in 2004. The hearing judge noted multiple violations of the MLRPC, stemming from Respondent's: failure to attend a hearing in a child support case; failure to file a post-conviction petition; failure to obtain service of process in a divorce case; and failure to timely file a claim for uninsured motorist benefits. Respondent also received a Commission Reprimand in December 2014 for his failure to maintain adequate records of his attorney trust account, resulting in an overdraft. In that case, Respondent commingled his funds with those of his clients and third persons as well as failed to promptly withdraw earned fees from his attorney trust account, thereby commingling his funds with those of his client and third persons.

Regarding the third factor, the hearing judge found that it applied because in four separate cases improper checks were written. Specifically, Respondent wrote checks out of his attorney trust account to either his landlord or himself, but recorded them in his client ledger or trust account ledger as checks for client medical expenses or attorney's fees. The hearing judge noted that this misconduct occurred over several years creating a pattern. The hearing judge also determined that the fourth aggravating factor applied because

19

Respondent has violated multiple rules of professional conduct and notes that in this proceeding alone Respondent violated Rules 1.l 5(a), 8.l(a), 8.4(a), (c), and (d), as well as Md. Rules 16-606.1, 16-607, and 16-609.

Additionally, the hearing judge also found that the fifth aggravating factor applied because Bar Counsel was forced to serve Respondent pursuant to Rule 19-724(b) by serving the CPF after unsuccessfully attempting to serve Respondent. Subsequently, CPF mailed Respondent the transmittal order, summons, and Petition at all three addresses on the record for Respondent. On January 5, 2017, Bar Counsel served discovery on Respondent by mailing the discovery to all three addresses, but Respondent never responded or asked for an extension of time to respond. The hearing judge noted that Respondent failed to file an Answer and in response, granted Bar Counsel's Motion for an Order of Default, and scheduled a hearing on February 9, 2017. The hearing judge also found that Respondent did not move to vacate the order within thirty days nor appear for the hearing. Instead, Respondent waited for the date of the hearing and filed a Motion to Vacate Judgment claiming that Bar Counsel had not served him with the Petition. In response to Respondent's motion, Bar Counsel filed an Opposition that described their efforts to serve Respondent and demonstrated that Respondent had been mailed three copies of the Petition.

Addressing the sixth aggravating factor, the hearing judge determined that Respondent provided multiple versions of his attorney trust account check register and found that each contained contradictory information. The hearing judge concluded that

20

Respondent's inconsistent disclosures were intended to deceive Bar Counsel throughout their investigation. The hearing judge also found that this view was supported by the fact that Respondent refused to acknowledge the wrongful nature of his conduct, thereby implicating aggravating factor seven.

The hearing judge also found that Respondent has been a member of the Maryland Bar for approximately twenty years, which equated to having substantial experience in the practice of law, thereby implicating aggravating factor nine (9). *See Attorney Grievance Commission v. Mininsohn*, 380 Md. 536, 576, 846 A.2d 353, at 376 (2004) (noting that an attorney with "almost twenty-five years' experience at the bar" has "substantial experience in the practice of law.").

Finally, addressing factor twelve, the hearing judge determined that there was a substantial likelihood that Respondent would repeat this type of misconduct. The hearing judge found that after receiving a Commission Reprimand in 2014 for violations of Rule 1.18(a) and former Md. Rules 16-606.1 and 16-607, Respondent continued to violate these Rules and attempted to deceive Bar Counsel by submitting false records. In light of the similarities between Respondent's 2014 misconduct, subsequent reprimand, and the conduct at issue here, the hearing judge determined there was a substantial likelihood of future violations to the MLRPC. The hearing judge concluded that no mitigating factors existed in this case.

21

## II.

### Standard of Review

In proceedings involving attorney discipline, "this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Commission v. Whitehead*, 405 Md. 240, 253, 950 A.2d 798, 806 (2008). This Court has said that "[i]n our review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous" and "[a]s to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, our consideration is essentially *de novo*." *Id*. Accordingly, we will review the legal conclusions *de novo* while applying a clearly erroneous standard to the factual findings.

## III.

### Discussion

As a preliminary matter, it is important to note that no exceptions were filed in this case. As such, we proceed to a review the hearing judge's findings of fact and conclusions of law to verify correctness. After a *de novo* review, we agree with the hearing judge that the Respondent violated MLRPC 1.15, 8.1, 8.4(d), 16-606.1, and Maryland Rules 16-607, and 16-609. Here, Petitioner requested disbarment stating, "the dishonest and deceitful conduct involved in this case, in the absence of any compelling extenuating circumstances warrants the ultimate sanction of disbarment." We agree.

The appropriate sanction for violations of the Rules of Professional Conduct "depends on the facts and circumstances of each case, including consideration of any mitigating factors." *Attorney Grievance Commission v. Goodman*, 381 Md. 480, 496, 850

22

A.2d 1157, 1167 (2004).  Additionally, this Court seeks "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal Profession." *Id*. at 496, 850 A.2d at 1167.  Further, "dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Attorney Grievance Commission v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001).

Here, the hearing judge found that the Respondent violated several Rules of Professional Conduct and observed that the Respondent's conduct illustrated a pattern of negligent and deceitful accounting practices, laden with gross inconsistencies between Respondent's Check Register, copies of checks, client ledgers, and bank records.  The Respondent intentionally violated MLRPC 8.4(c) by submitting false client ledgers and settlement sheets as well as writing a check to his landlord while purporting it to be a payment for medical services.  Respondent had a history of professional misconduct resulting in discipline.  Specifically, Respondent consented to a Commission Reprimand due to a failure to properly maintain adequate records in December of 2014.

The hearing judge determined that eight aggravating factors are present in this case discussed *supra*.  With regard to the likelihood of repetition of the misconduct, we find that Respondent is likely to engage in similar conduct in the future.  Specifically, the fact that the same account has been involved in separate violations several years apart, indicates that Respondent is likely to repeat this conduct if permitted to do so.  Finally, since the

23

Respondent's prior suspension and reprimand were insufficient to deter the behavior that led to the case at bar, coupled with Respondent's dishonest and deceitful conduct, weighs heavily against him.

For these reasons, we issued the September 12, 2017 *per curiam* order disbarring Respondent and assessing costs against him.